UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Kandis A. Westmore, Judge

| | |
|---|---|
| AFRICAN AMERICAN TOBACCO CONTROL LEADERSHIP COUNCIL, ET AL., ) ) ) ) | |
| Plaintiffs, ) ) | |
| VS. ) ) | **NO. CV 20-04012-KAW** |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL., ) ) ) ) | |
| Defendants. ) ) | |

Oakland, California
Thursday, November 5, 2020

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

POLLOCK COHEN LLP
60 Broad Street, 24th Floor
New York, NY 10004
BY: **CHRISTOPHER K. LEUNG, ESQUIRE**

For Defendants:

UNITED STATES DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530
BY: **DANIEL FEITH, ESQUIRE**

Reported By:    Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
Official Reporter

<u>**Thursday - November 5, 2020**</u>                    <u>**3:19 p.m.**</u>

**P R O C E E D I N G S**

**---oOo---**

  **THE CLERK:**  Calling CV 20-4012, African American
Tobacco Control Leadership Council, et al. vs. United States
Department of Health and Human Services, et al.

 Counsel, please state their appearances, beginning with
plaintiff.

  **MR. LEUNG:**  Good afternoon, Your Honor.  This is
Chrisopher Leung with the law firm Pollock Cohen LLP
representing Plaintiffs.

  **THE COURT:**  Good afternoon, Mr. Leung.

  **MR. FEITH:**  Good afternoon, Your Honor.  This is
Daniel Feith with the Department of Justice for Defendants.

  **THE COURT:**  Hi.

 Okay.  So we're addressing the Defendants' motion to
dismiss, and, you know, I think that there's just sort of an
issue of semantics going on here.  The Defense is arguing that
there is no duty to revise existing standards or adopt any new
ones but only requires periodic evaluations, and I think that
it just sort of misses the point.  I think that I agree with
the Plaintiffs that the FDA is required to act.  I don't
believe -- I don't interpret anything as imposing a mandatory
duty on the FDA to act in a particular way.  So there's a
distinction between, you know, being required to adopt new

standards and being required to make a determination about whether or not to adopt new standards.

And so, yes, the FDA would be required to do periodic evaluations, but it doesn't end there. You don't just do periodic evaluations and then do nothing, and -- I mean, is that what the Defense's position is, is that all that's required is that there be periodic evaluations, and then nothing that's obtained in those evaluations triggers any obligation to make a determination about what to do with that information?

MR. FEITH: Well, Your Honor, a number of points.

First, even if you read 387g(a)(5) to require FDA to make some determination, FDA has made that determination repeatedly. The provision requires periodic evaluation to make a determination. FDA has periodically evaluated whether to add menthol to the flavor ban, and at each point at which it's made that determination, it's determined that the appropriate course is not to regulate at that time but to consider the issue further. And so even if you agree with Plaintiffs' reading of the statutory provision, FDA hasn't unlawfully withheld any action that is statutorily required.

The other point I would offer is that -- a determination that FDA is not required to promulgate a standard just -- whenever it finds that that standard might -- might satisfy the statutory standard of being appropriate for the protection of

public health.  Given the many complex design features and scores of chemicals that contribute to making cigarettes harmful, there is a huge range of conceivable tobacco product standards that could, in theory, satisfy this standard of being appropriate for the protection of the public health.  But FDA is given discretion under the Act to decide whether to pursue -- whether it's worth, as a policy matter, to pursue a given product standard because as -- you know, as many cases have recognized, agencies have limited resources and have to be able to allocate those resources as they see fit.

And so Plaintiffs' view of the law would require FDA to basically pursue every conceivable tobacco product standard and shift resources from standards that FDA judges to be effective at combating the public health harms of tobacco to ones that FDA believes are less effective but still may cross the statutory threshold, and that's just not a tenable reading of section 387g.

THE COURT:  Mr. Leung, is that what the Plaintiffs are expecting?  I got the impression from what I read that the Plaintiffs were simply wanting the FDA to make a determination based on the information that it received.  I noted that there was information from 2013 -- well, let me go back.

So the Advisory Committee in a 2011 report concluded that the removal of menthol cigarettes from the marketplace would benefit public health.  Then in 2013, the FDA had a

1    peer-reviewed investigation that concluded that menthol

2    cigarettes were associated with increased smoking, initiation,

3    and likely posed a public health risk above the non-menthol

4    cigarettes. And then in 2018, the FDA commissioner announced

5    the FDA would advance a Notice of Proposed Rulemaking to ban

6    menthol cigarettes, but then in 2019, I guess it didn't happen.

7       And so is it that the Plaintiffs are arguing that there is

8    a mandatory duty for the FDA to ban menthol cigarettes or to

9    just make a determination about whether or not they should be

10    banned or whether or not other regulations should be imposed?

11       **MR. LEUNG:** Thank you, Your Honor.

12       The Plaintiffs for Claim 1 are only asking that this Court

13    require FDA to do what is required under the law, and that is

14    to make a determination as to whether or not menthol should be

15    added to the flavor ban list. Certainly this periodic

16    evaluation should have arisen when FDA received a copy of the

17    2011 report from the Advisory Committee.

18       The Advisory Committee was looking specifically at menthol

19    as directed by the statute and was applying the same criteria

20    that FDA itself would have had to consider should it have

21    needed or wanted to amend the tobacco product standard. But at

22    this particular stage, we are only asking FDA to make a

23    determination one way or the other as to whether or not menthol

24    should be added to the flavor ban. Certainly that obligation

25    arose in 2011 when it received the Advisory Committee Report.

It certainly arose again in 2013 and we would argue as well in 2018.

**THE COURT:** Right. And so I guess I'm just not understanding the Defendants' position here because it seems like there is an obligation to make a determination periodically. I mean, there's no duty of, you know, specific dates or specific lengths of time. I mean, none of that kind of thing is required. But there are supposed to be these periodic evaluations, as you note, and the FDA -- the Act requires the FDA to make some sort of determination about whether to modify the standard, which may include adding menthol cigarettes to the flavor ban or not, and so I -- when you say some decision was made, I'm not clear what that was because I thought you also argued with respect to the other claim that the FDA has not decided not to ban menthol at this point. So I'm unclear on what the FDA has done and what it believes it's obligated to do.

**MR. FEITH:** Sure. Let me attempt to clarify it.

FDA, as we explained in the briefs, has not made a final decision once and for all about whether to regulate -- whether to ban menthol cigarettes.

What 387g(a)(5) requires and contemplates is an ongoing process of review where FDA periodically returns to the existing tobacco product centers, to the flavor ban, and considers changes to it. FDA has done that in the 2013 -- in

its 2013 report, in its 2013 ANPRM, and the 2018 ANPRM.  In
each of those cases, it had information before it that it
considered.  It considered the question of whether regulatory
action was appropriate, and in each case, it decided that
instead of regulating at that time, it would consider the issue
further.  That's a determination about whether to change the
flavor ban, and Plaintiffs haven't ever explained why that
isn't a determination about whetter to change the flavor ban.
It's a determination that, for the timing being, they are not
going to change the flavor ban to encompass menthol.

But FDA is -- continues to consider the issue and has not
reached a final decision that would constitute final agency
action.

**THE COURT:**  So when would it constitute a final
decision?  It's not clear to me that -- I didn't even realize
that a determination had been made.  I thought you were arguing
that the FDA wasn't even required to make a determination.

**MR. FEITH:**  As a legal matter, we read 387g(a)(5) not
to require FDA to make a specific determination regarding
menthol.  As a legal matter, 387g(a)(5) leaves FDA discretion
over the sorts of questions it considers in the context of its
periodic review, and Plaintiffs are trying to invade that
discretion by requiring FDA to make a specific determination
regarding a specific flavor additive when there are other
possible changes to the flavor ban that FDA could consider.

1    But even if you disagree with us as a legal matter, as a

2    practical matter, FDA -- and we explain this in our -- in our

3    reply brief.  As a practical matter, FDA has, in fact, made

4    these determinations.  These determinations are implicit in

5    FDA's actions in 2013 and 2018.  And -- and that satisfies the

6    process of ongoing review that 387g(a)(5) contemplates.

7    And, again, you know, Plaintiffs, in their Complaint, seek

8    a -- seek FDA to issue -- to publish its determination as a

9    standalone item in the Federal Register, but this is an example

10   of how they're going -- they're trying to impose duties on FDA

11   that the statute doesn't impose.

12   There is no requirement under (a)(5) that FDA publish

13   these determinations in the form that Plaintiffs are seeking.

14   FDA has, on a repeated basis, evaluated the evidence for

15   banning menthol and decided to consider the issue further --

16   determined to consider the issue further rather than add

17   menthol to the flavor ban at that time.

18          **THE COURT:**  Okay.  So that's different.

19          Mr. Leung, what do you have to say about that?

20          **MR. LEUNG:**  Your Honor, I would say that to the extent

21   Defendants are saying that as a factual matter they've complied

22   with the obligation, that at this point then essentially they

23   have conceded jurisdiction here, and that any sort of factual

24   dispute should have resolved on a motion for summary judgment.

25   If that's Defendants' position, that jurisdiction exists, then

we're happy to move towards summary judgment, and we think that your Court's initial inclination was correct.

With respect to Defendants, I believe they call it a "tentative determination," a tentative determination appears nowhere in the Tobacco Control Act. A tentative determination is nowhere in the Administrative Procedure Act. It is simply semantics or wordplay or doublespeak to sort of call it "constant evaluation." That is what they have been doing, and that is what we have seen to date. We have not seen any sort of determination, which is what the statute requires.

You know, with respect to the Department's argument that there are a range of possible things that they need to consider, you know, we are not asking them -- we are not trying to invade their discretion with respect to, for example, marketing or advertising words. We simply suggested yes, perhaps the Federal Register would be a way to do it, but, of course, they can publish their determination in any particular way they want: Email, some sort of letter to us, or some sort of response to the citizen petition.

But the Act is clear, the statute is clear, that what it is they are required to do is not only evaluate the information that's given to them but also make a determination, something they have not done. And to the extent that they are arguing that *hey, we're the Government, we don't have so much money, obviously there is some discretion that should be applied here,*

I would note that in FDA's 2021 budget, they have identified
something north of $700 million just for tobacco product
regulation.  And that their annual budget, I believe, is
somewhere north of $4 billion.  I think the Government can
spend some time on menthol.

They have been handed this problem back in 2009 where
Congress directed them to take -- to create this committee, to
take a specific look at menthol, and then to sort of address
whether or not the flavor ban, which excludes menthol, should
actually be changed to include menthol.

The Administrative Procedure Act 555(b) clearly states
that an agency is supposed to resolve a matter that is handed
to it within a reasonable amount of time, and that is not
what's been happening here.

MR. FEITH:  Your Honor, may --

THE COURT:  Well, I will note that the FDA can be
compelled under the APA to act within a reasonable time, and
I'm just not clear whether or not the FDA has acted on this.
It's some sort of a nebulous thing that I'm hearing now that
sounds a little bit different than what was argued in the
papers.

MR. FEITH:  Your Honor, may I respond?

THE COURT:  Yes.

MR. FEITH:  Sure.

So I think we explained this quite clearly in our reply

brief, so I would -- I would refer to that.

But to respond to the specific points that Mr. Leung just raised, so with respect to his argument about the determinations being a factual issue, Plaintiffs are required to plead, in order to state a 706(1) claim, that the FDA has unlawfully withheld something -- the FDA has unlawfully withheld legally-required action.

If Plaintiffs' own allegations show that FDA has, in fact, made that determination, they haven't pled that element of their claim, and their claim should be dismissed.

With respect to Mr. Leung's points about the tentative determination, I think he's conflating two different things. The tentative determination was FDA's response to Plaintiffs' citizen petition and that was provided by FDA directly to Plaintiffs within the statutorily-required amount of time.

The determinations that I was referring to earlier that would satisfy any duty under 387g(a)(5) are FDA's 2013 report on menthol cigarettes, its 2013 ANPRM on menthol cigarettes, and its 2013 ANPRM on flavors -- on flavors in tobacco products which included consideration of menthol cigarettes.

His next point about, you know, they're agnostic as to how we publicize the determination -- email, Federal Register, you know, what have you -- there is no requirement of publicizing it at all.  387g(a)(5) talks about periodic evaluation.  That quite clearly sounds in an ongoing deliberative process, and

deliberate agency internal deliberative processes are

privileged.  They're not -- the whole point of it is to allow

FDA to make tentative determinations based on what is before it

and then revisit them at a later date.

So the publication requirement is just not -- whether it's

by email or otherwise, it's just simply not found in the

statute, and it's an attempt to impose a duty that's not in the

statute.

And, finally, the point about the FDA has enough money,

why doesn't it just spend some time on menthol I think really

highlights the (Zoom video and audio froze).

**THE COURT:**  You froze for a second.

**MR. FEITH:**  I'll back up a moment.

I was just saying that Mr. Leung's -- I hope I'm

pronouncing it correctly.

**MR. LEUNG:**  Yes.

**MR. FEITH:**  Thanks.

Mr. Leung's point about the FDA has this large budget, why

doesn't it just spend some time on menthol I think really gets

to kind of the core of what's going on here.  FDA and

Plaintiffs are where we are obviously in litigation.  FDA

shares Plaintiffs' commitment to protecting the public health,

and FDA has pursued its responsibility to protect the public

health from tobacco products in a broad range of ways.  And

fundamentally, Plaintiffs object to how FDA has chosen to

allocate its priorities and has -- and the fact that FDA has

chosen in the -- at the -- for the time being to advance other

regulatory initiatives that have -- that have significantly

protected the public health from tobacco products while still

considering the issue of adding menthol.  That sort of policy

disagreement is exactly the sort of disagreement that the

Supreme Court in *SUWA* said is not cognizable under 706(1).

706(1) doesn't allow a court to -- doesn't allow a court to

dictate how -- how an agency with discretion uses that

discretion, and this is -- but this is both to protect the

agency's discretion and to protect the Court from getting

entangled in policy issues that it doesn't have the information

to weigh in on.  So I think that that, you know -- that is kind

of, at root, what this dispute is about.

**THE COURT:**  Okay.

Mr. Leung, would you like to respond?

**MR. LEUNG:**  Certainly, Your Honor.  I would like to

keep it a little bit short.

First, there was a suggestion by the Department that I had

somehow confused a tentative determination with what is going

on with Claim 2, the citizen petition.  That is incorrect.  If

we take a look at page 9 of the Defendants' reply, the words

"tentative determination" show up there, and that's the basis

of their explanation there.

With respect to what it is our Complaint is trying to

achieve, I am fairly certain that our Complaint states that FDA

has not made such a determination as to whether or not to add

menthol to the list of prohibited characterizing flavors, and

so what we are talking about now is essentially a factual

dispute:  Did the FDA comply with the obligation or did it not,

and that is something that's not appropriate on a motion to

dismiss for lack of subject matter jurisdiction.  That's more

appropriately resolved on a summary judgment motion.

     With respect to, you know, FDA's discretion and their

broad discretion, I don't think there is any reasonable

interpretation that will allow FDA in this particular instance

to watch a public health forum occur with respect to menthol

cigarettes and sit by idly and continue to evaluate, especially

when it has already received information from its own advisory

committee, when it's conducted its own investigation, and

science, as I understand it, sort of weighs toward removing

menthol from cigarettes, period.

     That all said, the purpose of Claim 1 is essentially to

make FDA complete the latter half of what (a)(5) requires,

which is basically a determination.  FDA has not made such a

determination.  That is what we are trying to achieve through

Claim 1.

               **THE COURT:**  I agree.  It sounds like there is a

question of fact about whether or not the FDA has made a

determination on this issue.  I hear what you're saying,

Mr. Feith -- is it "Feith"?  Is that how you pronounce it?

   **MR. FEITH:**  "Feith," yes.

   **THE COURT:**  "Feith."

  That there is some tentative determination, which I don't really understand, and I know you mentioned it in your reply brief, but it appeared to me that, you know, what you were arguing is that there is no subject matter jurisdiction, and I don't -- and I don't think you have shown that by just creating a factual dispute about whether or not a determination has been made.

   **MR. FEITH:**  Your Honor, if I may.  It's -- it's -- we don't think it's a factual dispute.  We think that it's -- Plaintiffs' own allegations don't support -- don't plead that FDA has unlawfully withheld anything, and that's an element of a 706(1) claim.

  We also don't think that their allegations or their arguments show that FDA has a legal duty here, but there are two elements.  It has to be a legal duty and the agency action has to be unlawfully withheld.  And on the face of Plaintiffs' allegations, no lawfully required -- legally-required agency action has been withheld because these -- the only inference one can draw from the fact that the -- from these different steps that I've described, the 2013 report and the two ANPRMs, is that FDA has in fact made a determination not to regulate at that time, and that's the determination contemplated by

387g(a)(5).  And the fact that it's tentative is also
contemplated by 387g(a)(5).

387g(a)(5) doesn't refer to a once-and-for-all evaluation.
It refers to a periodic evaluation.  So it contemplates FDA --
it decides not to change it.  It contemplates FDA coming back
to the issue later and revisiting that determination, and
that's -- that's what Plaintiffs' own allegations and then
the -- and the judicially-noticeable Administrative Record
show.

Plaintiff can't come in, allege that FDA hasn't done
something that its own allegation and the Administrative Record
show that it's done and survive a motion to dismiss.  It just
hasn't -- it hasn't pled a claim at that point.

**THE COURT:**  Well, it's not as clear to me as you seem
to think it is, that everything is shown in, you know,
judicially-noticeable documents.  I just see -- in terms of
pleading, it's not clear to me that the Court doesn't have
subject matter jurisdiction.

But 387g(a)(5) requires periodic evaluation of tobacco
product standards established under this section to determine
whether such standards should be changed to reflect new
medical, scientific, or other technological data, and
Plaintiffs -- Plaintiffs contend that the FDA's required to
make specific -- a specific determination concerning whether
menthol should be added to the flavor ban which was established

1   in Section 387g(a)(1).  And your argument, the Defense

2   argument, was that the section imposes no duty to revise

3   existing tobacco product standards, which I agree with, or

4   adopt new ones.  I also agree.  But it only requires periodic

5   evaluations, a requirement that the FDA has satisfied by

6   undertaking evaluations of menthol cigarettes.

7       So I don't disagree with you up to that the point.  I

8   think where I start to disagree with you is that that's where

9   it ends.  I think that the FDA not only has to make those

10  periodic evaluations but has to make a determination of whether

11  to modify the standard or not.  I mean -- and so it's correct

12  that there's no requirement that you modify it, but you need to

13  make a determination about whether or not to.

14      Now you're telling me that there was some tentative

15  determination.  Mr. Leung is arguing that there wasn't, and so

16  I don't believe that that addresses subject matter jurisdiction

17  issues.

18          **MR. FEITH:**  Well, so, briefly, two points.

19      You know, implicit in the determination in these various

20  actions to consider the issue further is a determination not to

21  change the standard at the time.  I don't -- you know, I think

22  that's just -- it just sort of follows sort of logically from

23  the decision to consider the issue further that's reflected in

24  these documents.

25      The point about subject matter jurisdiction -- in order to

have subject matter jurisdiction, Plaintiffs need to allege an unlawfully -- an agency action unlawfully withheld, so there is two parts to that.  There is the idea that it is unlawfully withheld -- there is -- there's the idea that it's lawfully required, and there is the idea it's withheld.  And so if they haven't pled an agency action that has been withheld, there is no subject matter jurisdiction because they haven't satisfied the standard.

**THE COURT:**  Mr. Leung, did you not allege that there was required agency action that was withheld?

**MR. LEUNG:**  I'm going to read from paragraph 143 which is part of Claim 1.

"FDA's failure to make such a determination constitutes agency action unlawfully withheld or unreasonably delayed."

And there we are citing from 5 U.S.C. Section 706(1).

We go on to allege that:

"The failure by the agency to conclude a matter presented to it within a reasonable time."

And so, you know, as a factual matter, I think the Court can read the Amended Complaint that we've submitted and reach its own determination.  We obviously think that the Department's reading of our Amended Complaint is incorrect.

And so with respect to subject matter jurisdiction, I would just also add that it appears that the Department is simply focusing solely on the evaluation requirement and

ignoring and reading out of the statute the determination

requirement.  And even taking, you know, the Defendants' broad

discretion argument at face value, it seems unlikely that

Congress would have allowed, you know, the FDA or the Secretary

to recognize a public health problem and just let it go on and

on and on and on without any sort of backstop, and so this is

basically what we are asking this Court to do, to step in and

help FDA make that determination.

     And I would just --

          THE COURT:  Presumably -- I'm sorry for interrupting

you, but presumably --

          MR. LEUNG:  No.  I'm done.

          THE COURT:  -- if there was a determination made, then

it would be reviewable, right, under 706(2)?

          MR. LEUNG:  Right.

          THE COURT:  But by calling it "tentative," I don't

even know what that means, and so it's not reviewable, but we

have this information from 2011, 2013, 2018 where it seemed as

though there was some data that was collected about the impact

of menthol cigarettes on public health and, in fact,

information that it did pose a public health risk.  And it

seemed to be headed in the direction of taking some sort of

action, but then it just didn't happen.  But I don't know that

there was an actual determination after that based on all of

that information, a determination that *Well, we're not ready to*

*make an actual determination.  Our determination is that we're*

*not going to make a determination*?  You know, that's what's

bizarre about the argument.

MR. FEITH:  Your Honor, if I may, the determination is

to consider the issue further in light of the evidence that's

before the agency and in light of the agency's other

priorities.  That's -- that is a determination not to add

menthol to the flavor ban at that time.

The determination -- it would be disruptive to the

statutory scheme and to FDA's regulatory abilities to treat the

determination that 387g(a)(5) contemplates as a final agency

action.  By the terms of 387g(a)(5), it contemplates a

tentative determination.  It contemplates a periodic evaluation

where FDA isn't deciding it once and for all but is coming back

to it.

If I may, I would like to address two other points --

THE COURT:  Before you go to the other points, I just

want to ask, so potentially the Government or the FDA could

just go on and on for many years to come and decide not to make

an actual final decision.  So would that not be a failure to

act within a reasonable time?

MR. FEITH:  Let me offer a few points in response to

that.

First, if you agree that FDA does not have a -- have a

statutory obligation to promulgate tobacco product standards

1    regarding menthol in light of the statutory language, then it

2    follows that FDA doesn't have any obligation to cut off its

3    inquiry at any certain point.

4        That's -- that's -- the second point is that to the extent

5    that an outside party, such as Plaintiffs, wants to put the

6    issue before FDA, they do have the citizen petition process,

7    and I recognize that Plaintiffs have accused -- have alleged

8    the FDA has unreasonably delayed a final answer on their

9    citizen petition, but FDA provided a response, a preliminary

10    response to their citizen petition within the 180 days that

11    were required by regulation, and so parties -- outside parties

12    can put the question before FDA and -- and obtain a response

13    within 180 days.

14        Two other quick points, if I may.  I didn't mean to

15    suggest that Plaintiffs don't allege the legal conclusion that

16    FDA has unlawfully withheld something, but their factual

17    allegations don't show that FDA has unlawfully withheld action.

18    Their factual allegations show that even if you accept their

19    legal theory, FDA has provided the statutorily-required

20    determination.

21        And then to the broader point about it seemingly unlikely

22    that Congress would let FDA not do something about a public

23    health issue, you know, there are -- cigarettes, I think

24    Plaintiffs would agree, present a very broad range of public

25    health harms that FDA takes very seriously, and FDA has to

1    prioritize how it wants to tackle the enormously complex public

2    health issue that tobacco products -- all tobacco products, not

3    just menthol cigarettes, represent.

4         Plaintiffs have put forward a reading of the Tobacco

5    Control Act that requires FDA to, above all -- they use the

6    language "above all" in their brief -- regulate menthol.  There

7    is no support for that idea.

8         When Congress enacted the Tobacco Control Act, it included

9    nearly 50 findings.  Not a single one mentioned menthol.  They

10   focused on the public heart health harm from tobacco products

11   generally and on the issue of youth addiction in particular.

12        And menthol, to be sure, is an aspect of the addiction

13   problem, but it's just that.  It is -- it is an aspect.  And if

14   you accepted Plaintiffs' reading of "menthol above all," it

15   would mean, for example, that Congress had to regulate menthol

16   before it issued something -- issued a nicotine product

17   standard that lowered the nicotine yields on all cigarettes,

18   menthol and non-menthol alike.  And a nicotine product

19   standard, of course, would strike at the very core of the

20   addiction problem whereas a menthol ban would only strike at

21   part of it.

22        So they are putting forward really an unsustainable view

23   of the limits on FDA's discretion to approach public health

24   harms.  FDA has diligently approached -- worked to combat the

25   public health harms from tobacco products.  It has, you know,

in the last several years been dealing with a sea change in the tobacco product marketplace with the explosion in youth use of E-cigarettes, in youth use of cigars, in youth use of hookah water pipe products, all of which are used by youth in greater numbers than menthol cigarettes according to the 2018 ANPRM, and FDA has been working on all of those fronts to reduce youth access and combat the youth addiction problem, and happily it's had some success.

And in an ideal word, FDA would do everything, but FDA is -- is in the position of every agency in having to make resource allocation decisions, and those decisions are committed by the Act to FDA's discretion. And so while there may be some issues that FDA has not yet addressed, that doesn't create a cognizable claim under 706(1).

      **THE COURT:** Anything further from you?

      **MR. FEITH:** Well, Your Honor --  I'm sorry.

      **MR. LEUNG:** I'm sorry, Your Honor. My internet connection missed the first part of what you said.

      **THE COURT:** I just said is there anything further from you?

      **MR. LEUNG:** No, Your Honor.

Well, I would just say quickly that it is not as if we are trying to impose our view of the world on FDA. I think we make clear in our papers that Congress has already decided this. Congress has determined the priorities for FDA, and that if we

take a look at the legislative history, I think that becomes

abundantly clear.  We don't need to go to the legislative

history.  I think the statute itself and the other provisions

around the Act make it clear that Congress was particularly

concerned with menthol.

That said, I have nothing else, Your Honor.

**THE COURT:**  Okay.  Well, I am inclined to deny the

motion.  I will take everything under consideration that I've

heard before issuing my order, but I don't believe that the

motion sufficiently supports a conclusion that there is no

subject matter jurisdiction as to that claim.

With respect to the other claim, the 706(2) claim, that

one I probably will -- I will go ahead and grant the motion to

dismiss that one because to the extent that the FDA hasn't made

a final decision not to regulate menthol cigarettes, that that

claim would be premature, and so certainly once there is a

final agency decision, the Plaintiffs could bring that claim

then.

But, you know, right now, the confusion with what I've

just heard was that I thought it sounded like they made a

decision based on what Mr. Feith was arguing, but they really

just haven't -- they've made a tentative determination, so

there is no way for anyone to review it.  So the question is,

you know, whether or not they could -- the FDA could be

compelled to make an actual determination, final determination

1   instead of just having tentative -- I guess what amounts to
2   tentative determinations, which really is not a determination,
3   for many years.

4       And so those would just be -- those go to the merits not
5   to the Court's jurisdiction.  And so I respectfully disagree on
6   that point, Mr. Feith.

7       But as to the second claim, I do believe that I should
8   dismiss that one.

9       **MR. FEITH:**  Your Honor, if I may offer one further
10  suggestion?

11      **THE COURT:**  Yes.

12      **MR. FEITH:**  To the extent that the Court is inclined
13  to deny part of the motion, we would submit that the -- it
14  would make sense for the Court to stay proceedings until FDA
15  has had an opportunity to respond to the citizen petition.  At
16  that point, that will be obviously a determination on -- on the
17  matters the petition raises and will also, to the extent there
18  is any remaining disagreement between the parties, you know --
19  will focus the issues on where that disagreement lies.  So from
20  the interests of judicial economy, we think that that would be
21  the sensible course.

22      **THE COURT:**  So you mean instead of me issuing my
23  order?

24      **MR. FEITH:**  Well, I suppose, you know, if -- there is
25  no -- there is no issue with issuing the order, but in terms of

1    sort of further proceedings between that point and the -- and

2    the response to the citizen petition, we think it would just

3    make sense to stay things until the citizen petition response

4    is in.  We could --

5         **THE COURT:**  Well --

6         **MR. FEITH:**  Go ahead.  I'm sorry.

7         **THE COURT:**  Mr. Leung, it sounds like you want to

8    respond to that?

9         **MR. LEUNG:**  We could disagree with that -- we would

10   disagree with that proposal.  This is the first time that we

11   have heard about it.  I think we all understand that menthol

12   cigarettes pose a public health hazard.  That's part of the

13   reason why we decided to try to push the schedule here, and we

14   talked about this at our last initial conference before this

15   Court.

16       With respect to Claim 2, Claim 2 is separate and off by

17   itself.  Claim 1, though, I think it makes more sense to just

18   deal with the issues now.  And so given the sort of public

19   health harm that we have described in our Amended Complaint, I

20   think it makes sense to push the issue and resolve it as

21   quickly as possible.  We think that would be the better use of

22   the parties' and this Court's time.

23       **THE COURT:**  Okay.

24       Mr. Feith, obviously if you believe that there is a basis

25   for staying the proceedings, you can file a motion to --

1          **MR. FEITH:**  Understood.

2          **THE COURT:**  -- request a stay, and then Mr. Leung can

3   oppose it, if that's what he chooses to do, or the parties can

4   meet and confer, which is what I would recommend.

5          **MR. FEITH:**  Understood.

6          **THE COURT:**  That the parties meet and confer on that

7   issue because maybe there is something that can be worked out.

8          **MR. LEUNG:**  Certainly, Your Honor.

9          **THE COURT:**  Okay.  So with that, I think we are

10  finished, unless you have anything further?

11         **MR. LEUNG:**  Nothing further, Your Honor.

12         **THE COURT:**  Okay.

13         **MR. FEITH:**  Nothing further, Your Honor.

14         **THE COURT:**  Okay.  Thank you.

15             (Proceedings adjourned at 4:01 p.m.)

16

17

18

19

20

21

22

23

24

25

1

2

3                    <u>CERTIFICATE OF REPORTER</u>

4            I certify that the foregoing is a correct transcript

5      from the record of proceedings in the above-entitled matter.

6

7      DATE:    Tuesday, November 10, 2020

8

9      *Pamela Batalo Hebel*
       _____
10     Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
       U.S. Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25