UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AFRICAN AMERICAN TOBACCO CONTROL LEADERSHIP COUNCIL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>Defendants. | Case No. 20-cv-04012-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**<br><br>Re: Dkt. No. 82 |

In the instant case, Plaintiffs asserted violations of the Administrative Procedure Act ("APA"), on the grounds that Defendants failed to act on menthol cigarettes contrary to the duties imposed by the Family Smoking Prevention and Tobacco Control Act ("Tobacco Control Act"). (*See* Dismissal Order at 1, Dkt. No. 34.)

Pending before the Court is Plaintiff's motion for attorney's fees under the Equal Access to Justice Act ("EAJA"). (Pls.' Mot. for Atty's Fees, Dkt. Nos. 82, 83.[1]) Having considered the parties' filings, the relevant legal authority, and the arguments made at the November 17, 2022 hearing, the Court DENIES Plaintiff's motion for attorney's fees.

## I.   BACKGROUND

In 2009, the Tobacco Control Act became law, banning all flavors in cigarettes except for tobacco and menthol. (Second Am. Compl. ("SAC") ¶ 2, Dkt. No. 52.) Although the Tobacco Control Act did not ban menthol flavoring, it directed the Food and Drug Administration ("FDA")

---

[1] A corrected motion for attorney's fees was filed at Docket No. 83 and is the motion relied upon by the Court in this order.

to periodically reevaluate whether the flavor ban "should be changed to reflect new medical, scientific, or other technological data." (SAC ¶ 4.)

On April 12, 2013, Plaintiff African American Tobacco Control Leadership submitted a Citizen Petition with the FDA, requesting that it add menthol to the flavor ban. (SAC ¶¶ 28, 111.) The FDA did not respond to the Citizen Petition, and on June 17, 2020, Plaintiffs filed the instant lawsuit. (Compl., Dkt. No. 1.) On September 3, 2020, Plaintiffs filed an amended complaint, asserting violations of the APA based on: (1) the FDA's failure to make a determination as to whether to add menthol to the flavor ban, (2) the FDA's failure to respond to the Citizen Petition, and (3) the failure to add menthol to the flavor ban. (First Am. Compl. ("FAC") ¶¶ 137, 143, 149, 153.) Accordingly, Plaintiffs requested the following relief: (1) an order finding Defendants to be in violation of the APA, (2) an order finding Defendants to be in violation of the Tobacco Control Act, (3) an order directing Defendants to begin the rulemaking process for adding menthol to the flavor ban within 60 days, (4) an order directing Defendants to respond to the Citizen Petition, (5) an order directing Defendants to provide for publication in the Federal Register, explaining its decision to either add or not add menthol to the flavor ban, and (6) an order directing Defendants to complete an evaluation of tobacco product standards, including whether such standards should be changed. (FAC at 45-46.)

On September 8, 2020, the parties filed their initial joint case management statement ("CMC Statement"). (CMC Statement, Dkt. No. 20.) There, Defendants denied that they had unlawfully delayed responding to the Citizen Petition, but stated: "In any case, since FDA has committed to providing a response to that Citizen Petition by January 29, 2021, defendants contend that Count II should not require judicial action." (*Id.* at 4.) The parties then disputed whether Rule 26 initial disclosures were required, with Defendants asserting that the agency would "provide a declaration on its decision-making process . . . ." (*Id.* at 6-8.) The parties also disputed whether the Court should first decide Defendants' anticipated motion to dismiss, or if the motion to dismiss should be briefed concurrently with Plaintiffs' anticipated motion for summary judgment. (*Id.* at 6-8, 10.)

On September 15, 2020, the Court held the initial case management conference. First, the

2

1    Court determined that any motion to dismiss should first be decided, with cross motions for
2    summary judgment due thirty days after the Court's ruling on the motion to dismiss.  (Sept. 15,
3    2020 CMC Tr. at 3:19-4:2, 6:16-22.)  Next, the Court addressed the Rule 26 initial disclosures
4    issue, asking about the form of the planned declaration explaining the agency's reasons for the
5    delay.  (*Id.* at 7:19-8:1.)  Defendants explained that the declaration would be produced with their
6    summary judgment motion.  (*Id.* at 8:5-7.)  As Plaintiffs stated that they needed the declaration to
7    prepare its summary judgment motion, the Court requested that the parties meet and confer
8    regarding an earlier production of the declaration.  (*Id.* at 9:20-10:10.)  After Defendants asked for
9    clarification on what "earlier" meant, the Court and the parties agreed to two weeks after a ruling
10   on the motion to dismiss to ensure that Plaintiffs had the information needed for its summary
11   judgment motion.  (*Id.* at 10:11-17, 11:17-12:4, 12:20-24, 13:7-11.)  During this discussion,
12   Defendants noted that the FDA would be responding to the Citizen Petition on January 29, 2021,
13   and that the response would probably involve many of the same documents and people as the
14   declaration.  (*Id.* at 11:18-23.)  Plaintiffs also acknowledged that the FDA had "already agreed to
15   provide a response by January of next year." (*Id.* at 12:11-14.)  The Court later issued its minute
16   entry for the case management conference, stating that the parties were to "meet and confer
17   regarding Defendants' declaration," and that "Defendants shall provide Plaintiff with the
18   declaration no later than two weeks from the date the Court issued its order on the motion to
19   dismiss."  (Dkt. No. 25 at 1.)
20        On September 18, 2020, Defendants filed their motion to dismiss the first and third claims.
21   (Dkt. No. 26.)  As to the second claim regarding the failure to provide a response to the Citizen
22   Petition, Defendants did not move for dismissal, stating: "The Center for Tobacco Products has
23   agreed to provide a final response to Plaintiffs' citizen petition by January 29, 2021, at which
24   point Count II will be moot."  (*Id.* at 1 n.1.)  On November 12, 2020, the Court denied
25   Defendants' motion to dismiss as to the first claim, and granted it as to the third claim, thereby
26   triggering the two week deadline to provide the declaration.  (Dismissal Order at 10.)
27        On November 20, 2020, the parties filed a stipulation to extend the upcoming deadlines in
28   light of "Defendants hav[ing] committed to providing Plaintiffs with a final substantive response

3

to the citizen petition by January 29, 2021 . . . ." (Nov. 20, 2020 Stip. at 2, Dkt. No. 39 (citing CMC Statement).) Further, Defendants "commit[ted] that the final response to the citizen petition necessarily will entail a determination . . . concerning whether to add menthol to the flavor ban list in § 387(a)(1)(A)," and that it was "Defendants' position that their anticipated response will provide all the relief available under Plaintiffs' remaining claims[.]" (*Id.*) Thus, the parties requested that "the Court extend the current remaining deadlines in this litigation until after January 29, 2021." (*Id.* at 3.) On December 1, 2020, the Court granted the parties' stipulation. (Dec. 1, 2020 Order at 2.)

On April 29, 2021, the FDA responded to the Citizen Petition. (*See* SAC ¶ 16.) On May 21, 2021, Plaintiffs filed the operative complaint based on the FDA's failure to begin the rulemaking process, including its failure to publish a notice of proposed rulemaking. (SAC ¶ 161.) Plaintiffs also asserted that the FDA's April 29, 2021 response did not "concurrently take appropriate action implementing the approval" of the Citizen Petition, and thus again sought an order directing Defendants to respond to the Citizen Petition. (SAC ¶ 168, p. 51.)

On June 9, 2021, Defendants filed their second motion to dismiss, arguing that the grant of the Citizen Petition mooted the case. (Dkt. No. 53 at 2.) On November 17, 2021, the Court issued an order holding Defendants' motion to dismiss in abeyance on November 17, 2021. (Abeyance Order, Dkt. No. 73.) As an initial matter, the Court found that there was no statutory requirement that the FDA issue a notice of rulemaking in order to make a make a determination on the Citizen Petition. (*Id.* at 2.) Thus, the Court explained:

> [T]he primary issue is whether Defendants have engaged in undue delay in promulgating the Notice of Rulemaking. The FDA has stated that it intends to issue a notice of rulemaking by April 2022, or in approximately five months. If the FDA does not issue the Notice of Rulemaking, the Court may find that the delay is unreasonable under the factors set forth in *Telecommunications Research and Action Center v. FCC* ("TRAC") for determining unreasonable delay.

(*Id.* at 3 (citation omitted).) The Court then explained that per *In re a Community Voice*, "a delay of more than one year could very well be unreasonable (particularly as that delay continues)." (*Id.* at 3-4.) Because the FDA issuing the notice of rulemaking as planned was "potentially

4

1   determinative to the Court's disposition of the pending motion to dismiss," the Court "f[ound] it
2   prudent to hold the motion in abeyance in order to give the FDA an opportunity to issue the Notice
3   of Rulemaking on its stated schedule." (*Id.* at 4.)
4          In April 2022, the FDA issued the notice of proposed rulemaking. (Dkt. No. 77 at 2.) In
5   light of the proposed rule, Plaintiffs agreed to file a voluntary dismissal. (Dkt. No. 79 at 2.) On
6   June 1, 2022, Plaintiffs voluntarily dismissed the case. (Dkt. No. 81.)
7          On August 30, 2022, Plaintiffs filed the instant motion for attorney's fees. On September
8   27, 2022, Defendants filed their opposition. (Defs.' Opp'n, Dkt. No. 86.) On October 11, 2022,
9   Plaintiffs filed their reply. (Pls.' Reply, Dkt. No. 89.)

## II. LEGAL STANDARD

"Under the 'American rule,' litigants ordinarily are required to bear the expenses of their litigation unless a statute or private agreement provides otherwise." *Carbonell v. INS*, 429 F.3d 894, 897-98 (9th Cir. 2005). One such statute is the EAJA, which entitles a litigant "to attorney's fees and costs if: (1) he is the prevailing party; (2) the government fails to show that its position was substantially justified or that special circumstances make an award unjust; and (3) the requested fees and costs are reasonable." *Id.* at 898.

In determining whether a litigant is a prevailing party, the litigant must have "achieved 'a material alteration in the legal relationship to the parties' that is 'judicially sanctioned.'" *Klamath Siskiyou Wildlands Ctr. v. United States BLM*, 589 F.3d 1027, 1030 (9th Cir. 2009) (quoting *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604-05 (2001)). Thus, the Supreme Court has rejected the "catalyst theory," which would have "allow[ed] an award where there is no judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd.*, 532 U.S. at 605. In other words, "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.*

## III. DISCUSSION

The Court finds that Plaintiffs are not prevailing parties. Because "[p]revailing party status must always rest on a judicial sanction -- typically an order of some kind -- that materially alters

the parties' legal relationship," "the first question we must ask is, 'what is the judicial order or sanction?'" *Klamath Siskiyou Wildlands Ctr.*, 589 F.3d at 1031.  Here, Plaintiffs base prevailing party status on three orders: (1) the September 15, 2020 case management conference minute entry, (2) the December 1, 2020 order granting the parties' November 20, 2020 stipulation, and (3) the November 17, 2021 order holding Defendants' motion to dismiss in abeyance.  (Pls.' Mot. for Atty's Fees at 7, 9, 11.)  The Court addresses each in turn.

### A. September 15, 2020 Case Management Conference Minute Entry

Plaintiffs assert that the September 15, 2020 minute entry provided Plaintiffs relief by requiring Defendants to produce the declaration explaining the agency's reasons for the delay within two weeks of the Court's dismissal order.  (Pls.' Mot. for Atty's Fees at 7.)  Specifically, Plaintiffs contend that this requirement for the declaration provided Plaintiffs with the relief sought, namely an explanation for Defendants' delay.  (*Id.*; *see also* Pls.' Reply at 2.)

The Court disagrees because the order did not provide Plaintiffs with the relief sought.  As the Ninth Circuit has explained, "[t]he material alteration in the legal relationship of the parties must be relief that the would-be prevailing party sought[.]" *Klamath Siskiyou Wildlands Ctr.*, 589 F.3d at 1030.  In the then-operative complaint, Plaintiffs did not simply request an explanation for Defendants' delay, but "[a]n Order directing defendants to provide **for publication in the Federal Register**, the basis for defendants' decision to either (a) add menthol to the list of banned characterizing flavors for combustible cigarettes, or else (b) not add menthol to such list, within 60 days of the date of such Order."  (FAC at 45-46 (emphasis added).)  In short, Plaintiffs were requesting a formal publication in the Federal Register regarding Defendants' decision to either add or not add menthol to the flavor ban.  Here, in contrast, Defendants were planning to provide a declaration explaining its delay in *making* that decision as part of its anticipated summary judgment motion.  Thus, the declaration explaining the delay is not the same relief for which Plaintiffs sued.  *See Klamath Siskiyou Wildlands Ctr.*, 589 F.3d at 1032 (finding no prevailing party status based on a stipulation because "[a]lthough the stipulation altered the parties' legal relationship by preventing the BLM from doing something it otherwise was free to do, such alteration was not *material* in the context of the relief Klamath sought in this lawsuit.")

1    Moreover, as a practical matter, the minute entry was unrelated to the merits of the case.
2    Rather, the Court was setting a schedule for the briefing of the anticipated cross motions for
3    summary judgment. As Defendants made clear at the case management conference, Defendants
4    already intended to produce the declaration as part of its summary judgment motion, but the Court
5    ordered an earlier production so that Plaintiffs could review the declaration prior to filing their
6    own cross motion for summary judgment. (Sept. 15, 2020 CMC Tr. at 8:5-7, 9:20-10:10.) Thus,
7    at most, the minute entry required Defendants to produce the declaration two weeks before it
8    otherwise would have.

### B. December 1, 2020 Order Granting Stipulation

Next, Plaintiffs rely upon the December 1, 2020 order granting the parties' stipulation, arguing that pursuant to the stipulation, Defendants committed to responding to the Citizen Petition by January 2021 in exchange for not having to provide the declaration. (Pls.' Mot. for Atty's Fees at 9; Pls.' Reply at 3; Leung Decl. ¶ 24, Dkt. No. 82-5.)

An order that grants a stipulation between the parties can be sufficient to confer prevailing party status on a litigant if it "requires a material alteration in the legal relationship between the parties[.]" *Carbonell*, 429 F.3d at 899. For example, in *Carbonell*, the plaintiff filed suit, seeking to compel the Board of Immigration Appeals ("BIA") to stay his deportation until it ruled on his motion to reconsider. *Id.* at 896. After the district court denied the government's motion to dismiss, the district court granted the parties' stipulation to a stay of deportation until the BIA decided the motion to reconsider. *Id.* at 897. The Ninth Circuit thus found that the plaintiff "received much of the relief he sought in the district court." *Id.* at 900. Further, because the district court had granted the stipulation staying the case, the relief obtained by the plaintiff "ha[d] the necessary judicial imprimatur to qualify a plaintiff as a prevailing party." *Id.* at 901 (internal quotation omitted); *see also Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000) (basing prevailing party status on an enforceable settlement that required the defendant "to do something it otherwise would not be required to do").

Key to *Carbonell* is that the stipulation and order required that the defendant do something, namely stay the deportation until the motion to reconsider was decided. In contrast, in *Ortega v.*

7

*Jennings*, the district court found that a stipulation and proposed order changing a briefing schedule did not confer prevailing party status. There, the petitioner filed a habeas petition and motion for a temporary restraining order, seeking to enjoin ICE from re-detaining him. Case No. 18-cv-2368-PJH, 2019 U.S. Dist. LEXIS 5030, at *3 (N.D. Cal. Jan. 10, 2019). The parties then filed a stipulation stating that the parties were "continuing to work toward an extrajudicial resolution of this case," and thus sought to continue the briefing schedule. *Id.* at *4. The stipulation also stated that ICE did not intend to re-arrest the petitioner, absent a material change in circumstances. Thereafter, the parties stipulated to dismissal of the case. *Id.*

In denying the petitioner's motion for attorney's fees under the EAJA, the district court found that the order granting the stipulation changing the briefing schedule did not confer prevailing party status. *Ortega*, 2019 U.S. Dist. LEXIS 5030, at *8. While the stipulation stated that ICE did not intend to re-arrest the petitioner, the district court explained that "the court's incorporation of the parties' stipulation into a court order did not materially change the parties' legal relationship because nothing about the stipulation prevented ICE from re-arresting petitioner." *Id.* at *9. Moreover, "even if the order had prohibited ICE from re-arresting petitioner before the court held a hearing on petitioner's motion, that was a voluntary action taken by respondents." *Id.* The district court further noted that "nothing about the court's scheduling order indicated that the petitioner was entitled to some actual legal or equitable relief," and that "the court certainly did not intend to convert a scheduling stipulation into an order that granted petitioner actual relief." *Id.* (original emphasis).

Like *Ortega*, the stipulation and proposed order in this case do not require Defendants to *do* anything. Rather, the stipulation simply acknowledges that Defendants had committed to responding to the Citizen Petition by January 2021, such that a continuation of the impending deadlines was warranted. (Nov. 20, 2020 Stip. at 2.) Indeed, by the time of this stipulation, Defendants had repeatedly stated that they were responding to the Citizen Petition by January 2021, including in the September 8, 2020 case management conference statement, at the September 15, 2020 case management dent conference, and in its September 18, 2020 motion to dismiss. (CMC Statement at 4; Sept. 14, 2020 Tr. at 11:18-20; Dkt. No. 26 at 1 n.1.) The

stipulation notably refers back to the case management conference statement with respect to Defendants' commitment.  (Nov. 20, 2020 Stip. at 2.)

In his declaration and at the hearing, Mr. Leung stated that Defendants' counsel asserted that they did not want to provide the declaration, and that they agreed to provide the Citizen Petition response "in exchange for being relived of the requirement to produce a declaration." (Leung Decl. ¶ 24.)  The stipulation, however, does not remove the need for a declaration.  Rather, it "extend[ed] the current remaining deadlines in this litigation until after January 29, 2021," including the declaration.  (Nov. 20, 2020 Stip. at 3.)  There is no suggestion that the declaration would not have been necessary if, for example, the parties did file their cross motions for summary judgment.

Plaintiffs point to Defendants' commitment not only to respond to the Citizen Petition, but also to comply with § 387(g)(a)(5)'s determination requirement.  (Pls.' Mot. for Atty's Fees at 9.)  The stipulation, however, states "that the final response to the citizen petition necessarily will entail a determination in accordance with 21 U.S.C. § 387g(a)(5) concerning whether to add menthol to the flavor ban list in § 387(a)(1)(A)." (Nov. 20, 2020 Stip. at 2.)  Thus, it is not clear that the stipulation creates any change from Defendants' prior commitments.  Taken together, Defendants' commitment to responding to the Citizen Petition prior to entering into the stipulation is more akin to a "voluntary change in the defendant's conduct," which is not sufficient for prevailing party status.  After all, "[t]o receive what one sought is not enough to prevail: the court must *require* one's opponent to give it."  *Klamath Siskiyou Wildlands Ctr.*, 589 F.3d at 1031; *see also Perez-Arellano v. Smith*, 279 F.3d 791, 795 (9th Cir. 2002) (finding no prevailing party status where "the INS . . . voluntarily granted his application for naturalization.  His change of status was the result of the INS' voluntary decision and was not compelled by the district court.").

Moreover, even if the stipulation represented a change from Defendants' prior position, neither the stipulation nor proposed order indicate Plaintiffs are entitled to actual relief.  Rather, like *Ortega*, the stipulation and order merely affected the planned briefing schedule in light of Defendants' planned response to the Citizen Petition.  As Defendants correctly point out, "[i]f FDA had failed to honor its voluntary commitment to respond to the citizen petition by a

particular date, the agency would not have been in contempt of the December 1, 2020 scheduling order." (Defs.' Opp'n at 9.) Plaintiffs could not have sought to enforce the December 1, 2020 order to obtain a response to the Citizen Petition or a § 387g(5) determination, because the only thing that order required was a continuation of the case deadlines. Thus, the December 1, 2020 order was not "an *enforceable entitlement* to relief," as it did not "allow one party to require the other party to do something it otherwise would not be required to do." *Klamath Siskiyou Wildlands Ctr.*, 589 F.3d at 1031 (internal quotation omitted).

### C.   November 17, 2021 Abeyance Order

Finally, the Court finds that the November 17, 2021 order holding Defendants' motion to dismiss in abeyance did not grant any judicial relief. The Court did not order Defendants to issue the notice of proposed rulemaking by April 2022. Rather, it simply explained that whether Defendants issued the notice of proposed rulemaking would affect the outcome of the motion to dismiss, such that it was prudent to hold the motion in abeyance. While the Court certainly pointed out that the failure to issue the notice of proposed rulemaking by April 2022 *could* affect the TRAC analysis, the Ninth Circuit is clear that a material alteration in the parties' legal relationship requires "actual *relief*, not merely a determination of legal merit. A favorable determination on a legal issue, even if it might have put the handwriting on the wall, is not enough by itself." *Klamath Siskiyou Wildlands Ctr.*, 589 F.3d at 1030.

Even if the Court could have, as Plaintiff suggests, converted Defendants' motion into a summary judgment motion or ruled on Defendants' motion to dismiss as a summary judgment order, the Court did not do any of those things. (*See* Pls.' Reply at 5.) The Court merely declined to rule on the motion to dismiss to see if Defendants would issue the notice of proposed rulemaking. As with the December 1, 2020 order, if Defendants had not issued the notice of proposed rulemaking in April 2022, Defendants would not have been in contempt of the November 17, 2021 order. Nor could Plaintiffs have sought to enforce the November 17, 2021 order to require Defendants to issue the notice of proposed rulemaking. The Court would, at the very least, have had to issue another order *requiring* Defendants to perform a specific act. Absent such an order, there was no enforceable entitlement to relief. *See Klamath Siskiyou Wildlands*

10

*Ctr.*, 589 F.3d at 1031.

Accordingly, the Court finds that Plaintiffs are not prevailing parties in this case. Plaintiffs cannot identify "an enforceable, judicially sanctioned award of much of the relief the plaintiff sought," and thus attorney's fees are not warranted. *Klamath Siskiyou Wildlands Ctr.*, 589 F.3d at 1031. While it is certainly likely that Defendants would not have begun the rulemaking process absent this lawsuit, the Supreme Court has made clear that it is not sufficient for a lawsuit to be the "catalyst" for change. *Buckhannon Bd.*, 532 U.S. at 605.

### IV. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiffs' motion for attorney's fees.

IT IS SO ORDERED.

Dated: November 22, 2022

KANDIS A. WESTMORE
United States Magistrate Judge